# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jonas Hernandez, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Wegmans Food Markets, Inc., | |
| Defendant. | |

Plaintiff Jonas Hernandez ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Wegmans Food Markets, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on his personal knowledge.

## NATURE OF THE ACTION

1. Defendant formulates, manufactures, advertises, and sells its Wegmans brand "In 100% Juice" Canned Fruits (the "Products")[1] throughout the United States, including in New York. Defendant markets its Products in a systematically misleading manner by conspicuously misrepresenting on the labels of the Products that they: (1) are made "In 100% Juice Blend" and (2) contain "No Artificial Colors, Flavors, or Preservatives." Defendant reinforces these misrepresentations by adding vignettes and the names of the fruits on the labels.

---

[1] The Products include: (1) "Wegmans Canned Sliced Peaches"; (2) "Wegmans Canned Peach Halves"; (3) "Wegmans Canned Apricot Halves"; and (4) "Wegmans Canned Fruit Cocktail."

2. Unbeknownst to consumers, however, the Products all share a common ingredient that belies their "100% Juice Blend" and "No [Artificial] Preservatives" representations: ascorbic acid—a well-documented synthetic ingredient.

3. Defendant's most recent labeling of its Products, along with their respective ingredient lists, are depicted below:



**Ingredients:** Peaches, Water, Pear Juice Concentrate, Peach Pulp and Juice, **Ascorbic Acid (Vitamin C) to protect color.**



**Ingredients:** Peaches, Water, Pear Juice Concentrate, Peach Pulp and Juice, **Ascorbic Acid (Vitamin C) to protect color.**



**Ingredients:** Apricots, Water, Apricot Pulp and Juice, Pear Juice Concentrate, **Ascorbic Acid (Vitamin C) to protect color.**



**Ingredients:** Diced Peaches, Diced Pears, Water, Grapes, Peach Pulp and Juice, Pineapple Sectors, Pear Juice Concentrate, Halved Cherries (colored red with Carmine), **Ascorbic Acid (Vitamin C) to protect color.**

4. Defendant's deceptive marketing is further bolstered by the aura of healthiness created by its "Food You Feel Good About" stamp on its Products—which promises, *inter alia*, that the food item won't contain any "artificial colors, flavors or preservatives." Defendant, however, creates a special exception when it comes to ascorbic acid:[2]

**Good to know:** We allow ingredients that are found in nature even if produced from something else. Examples: citric acid, ascorbic acid (vitamin C), tocopherols (vitamin E) & enzymes.

5. In fact, Defendant offers virtually identical canned fruits, without ascorbic acid, under its slightly more expensive "Organic" brand, as do other competitors: —as depicted below:



---

[2] https://www.wegmans.com/health-nutrition/feel-your-best/wegmans-brand/food-you-feel-good-about/ (last accessed October 4, 2023).

6. As a result of its deceptive conduct, Defendant is, and continues to be, unjustly enriched at the expense of its consumers.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

8. This Court has personal jurisdiction over Defendant Wegmans Food Markets, Inc. because Defendant Wegmans Food Markets, Inc., is incorporated and maintains its principal place of business in New York. This Court also has personal jurisdiction over Defendant because it conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchases.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## PARTIES

10. Plaintiff Jonas Hernandez is a citizen of New York, who resides in Brooklyn, New York. Plaintiff purchased Defendant's Products (including, but not limited to, Defendant's "Canned Sliced Peaches") for his personal use on various occasions within the applicable statute of limitations, with his most recent purchases taking place on or about September of 2023.

Plaintiff Hernandez made these purchases from Defendant's store located at 21 Flushing Ave, Brooklyn, NY 11205, and through online delivery applications. Prior to making his purchases, Plaintiff Hernandez saw that the Products were labeled and marketed as being made "In 100% Juice" with "No [Artificial] Preservatives." Plaintiff Hernandez relied on Defendant's representations when he decided to purchase the Products over comparable products that did not make those claims. Plaintiff Hernandez saw Defendant's representations prior to and at the time of his purchases and understood them as a representation and warranty that the Products were exclusively made "In 100% Juice" that contained "No [Artificial] Preservatives." Plaintiff Hernandez relied on these representations and warranties in deciding to purchase the Products. Accordingly, those representations and warranties were part of the basis of his bargains, in that he would not have purchased the Products on the same terms had he known that those representations were not true. Furthermore, in making his purchases, Plaintiff Hernandez paid a substantial price premium due to Defendant's false and misleading representations concerning the Products. Plaintiff Hernandez, however, did not receive the benefit of his bargains because those representations were not, in fact, true.

11. Defendant Wegmans Food Markets, Inc., is a corporation organized under the laws of New York with its headquarters at 1500 Brooks Avenue, Rochester, NY 14624. Defendant manufacturers, packages, labels, advertises, markets, distributes and/or sells the Products in New York and throughout the United States.

**GENERAL ALLEGATIONS**

*Overview of Defendant's Deceptive Business Practices*

12. The global juice market has experienced a significant burst of growth as health-oriented consumers have turned to natural juices due to their rich nutritional content: which includes essential vitamins, minerals, and antioxidants. These perceived health benefits, along

5

with the increasing aversion toward synthetic ingredients, have made fruit juices top contenders in the beverage industry.[3] Indeed, recent consumer surveys indicate that approximately "half of Americans say they seek out natural flavors at least some of the time," with most of these respondents looking for products that are "not artificial or synthetic."[4] In fact, the second largest contributing factor toward consumer confidence regarding the safety of food is that it be labeled as "Having No Artificial Ingredients."[5]

13. In response to this rise in consumer demand, food and beverage manufacturers pivoted by producing fruit juices *en masse*. Despite this, however, many of these so-called "fruit juices" are merely a hoax—containing the same plethora of synthetic ingredients as previous food and beverage products. Defendant's Products falls squarely within this gamut of deceptive conduct.

14. By labeling its Products as being made "In 100% Juice" with "No [Artificial] Preservatives," Defendant deceptively attempts to distinguish itself from other fruit juices that do contain additional synthetic preservatives. Defendant's deceptive marketing is further bolstered by the aura of healthiness created by its "Food You Feel Good About" stamp on its Products—which promises, *inter alia*, that the food item won't contain any "artificial colors, flavors or preservatives." As discussed in greater depth below, however, Defendant's Products are neither

---

[3] IMARC, *Fruit Juice Market Report by Product Type (100% Fruit Juice, Nectars, Juice Drinks, Concentrates, Powdered Juice, and Others), Flavor (Orange, Apple, Mango, Mixed Fruit, and Others), Distribution Channel (Supermarkets and Hypermarkets, Convenience Stores, Specialty Food Stores, Online Retail, and Others), and Region 2023-2028*, https://www.imarcgroup.com/fruit-juice-manufacturing-plant (last accessed October 4, 2023).
[4] International Food Information Council*, IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021), https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed October 4, 2023).
[5] International Food Information Council, *2023 Food & Health Survey* (May 23, 2023) at 73, https://foodinsight.org/2023-food-and-health-survey/ (last accessed October 4, 2023).

6

contained "In 100% Juice" nor are they free of "[Artificial] Preservatives."

***Overview of Ascorbic Acid and Defendant's "No [Artificial] Preservatives" Claims***

15.     Ascorbic acid (also known as Vitamin C) is a popular food additive used for its flavoring, nutritional fortification, and preserving functions. Although ascorbic acid can be derived from natural sources such as citrus fruits, doing so is prohibitively expensive for companies that require the ingredient in large quantities.[6] As such, most ascorbic acid is commercially produced, and manufactured, through extensive chemical processing.[7] In fact, the United States Department of Agriculture ("USDA") found that "all commercial ascorbic acid [is] synthetically derived."[8] The reason for this is that, "[w]hile ascorbic acid is naturally produced … its reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically derived."[9]

16.     Ascorbic acid functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness. Tellingly, the Food and Drug Administration ("FDA") lists "ascorbic acid" under the heading "Subpart D - Chemical Preservatives." 21 C.F.R. § 182.3013. The FDA also specifically regulates the use of ascorbic acid for the exact fruit canned products that Defendant manufactures.   The FDA also regulates ascorbic acid in the formulation of canned juices. *See* 21 C.F.R. § 145.115(a)(1)(vi) (permitting ascorbic acid to be used in "Canned apricots" as "to preserve color."); 21 C.F.R. § 145.135(a)(1)(iv) (permitting ascorbic acid to be used in "Canned fruit cocktail" in order "to

---

[6] Dolchem Quality Chemicals, *Ascorbic Acid Journey: From Production to Applications*, available at: https://www.dolchem.com/blog/ascorbic-acid-journey-from-production-to-applications/ (last accessed October 4, 2023).
[7] *Id.*
[8] U.S. Dep't of Agric., USDA National Organic Program, *Ascorbic Acid* 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last accessed October 4, 2023).
[9] *Id.*

7

preserve color."); 21 C.F.R. § 145.135(a)(1)(vi) (permitting ascorbic acid to be used in "Canned peaches" in order "to preserve color."). Furthermore, the FDA classifies and identifies ascorbic acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of how ascorbic acid is used as a preservative in beverages and other products.[10]

17.     Based on this framework, it is hardly surprising that all of Defendant's Products openly declare that they contain "Ascorbic Acid (Vitamin C) to protect color." *See supra*, ¶ 3. Nor is it surprising that Defendant lists ascorbic acid as one of the few exceptions "Food You Feel Good About" stamp:

> "We allow ingredients that are found in nature ***even if produced from something else.*** Examples: citric acid, ***ascorbic acid*** (vitamin C), tocopherols (vitamin E) & enzymes." (emphasis added).[11]

18.     This point is further bolstered by the fact that Defendant also has a line of "Organic" food items. For instance, unlike the Products at issue, Defendant's "Organic Canned



---

[10] https://public4.pagefreezer.com/browse/FDA/31-12-2022T07:59/https:/www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors (last accessed October 4, 2023).
[11] *See supra*, footnote 2.

Sliced Peaches" conspicuously disclose that they contain "***Naturally Derived*** Citric Acid" in "compliance with USDA Organic standards."[12] (emphasis added).

19. Based on the foregoing, Defendant's use of synthetic ascorbic acid in its Products renders its "No [Artificial] Preservatives" representations false and misleading.

*Defendant's False "100% Juice" Claims*

20. In addition to its "No [Artificial] Preservatives" misrepresentations, Defendant compounds the problem by claiming that the Products are made "In 100% Juice." As discussed above, however, all of Defendant's Products contain "ascorbic acid" — a non-juice food additive. As such, Defendant's "100% Juice" representations are literally false.

21. To make matters worse, Defendant's "100% Juice" misrepresentations also run afoul of pertinent FDA regulations. Specifically, the FDA provides that:

> "If the beverage contains 100 percent juice and also contains non-juice ingredients… [and] the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added — — — — — ," the blank filled in with a term such as "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener")[.]" 21 C.F.R. § 101.30(b)(3).

Defendant's Products fail to comply with this FDA regulation—thus given the impression that the Products are essentially 100% juice beverages (with added fruits). Consumers are accustomed to purchasing properly labeled juices. As such, since Defendant fails to disclose that its "100% Juice" also contains an added ingredient—as required under the FDA—they are further misled into believing that the Products do not contain any non-juice ingredients.

---

[12] https://shop.wegmans.com/product/26542 (last accessed October 4, 2023).

9

Although Plaintiff does not seek to enforce the FDA, Defendant's non-compliance illustrates its misconduct.

22. The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[13] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy and clean food items: like the deceptively advertised Products.

23. Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action on behalf of himself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

25. **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

26. **New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

27. The Classes do not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

---

[13] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed October 4, 2023).

28. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

29. ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

30. ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may also be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

31. ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

   (a) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

   (b) Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing the Products;

   (c) Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

   (d) Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

  (e) Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

  32. ***Typicality:*** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

  33. *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because he has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

  34. Moreover, the proposed Classes can be maintained because they satisfy both Rule 23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any questions affecting only individual members and a Class Action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

  (a) The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

  (b) If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

  (c) Absent a class action, Defendant likely will retain the benefits of its wrongdoing,

and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
### Violation of State Consumer Protection Statues[14]
### (On Behalf of Plaintiff and the Nationwide Class)

35. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

36. The Consumer Protection Statutes of the Nationwide Class members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

37. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by misrepresenting that the Products are made "In 100% Juice" containing "No [Artificial] Preservatives." Despite those representations, however, the Products

---

[14] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.; Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

contain "ascorbic acid"— a non-juice synthetic preservative.

38. The foregoing deceptive acts and practices were directed at consumers.

39. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

40. As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

41. On behalf of himself and the Nationwide Class members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II
### Violation of New York G.B.L. § 349
### (On Behalf of Plaintiff and the New York Subclass)

42. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

43. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

44. In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

45. Plaintiff and the New York Subclass members are consumers who purchased the Products from Defendant for their personal use.

46. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by representing that the Products are made "In 100% Juice"

containing "No [Artificial] Preservatives." Despite those representations, however, the Products contain "ascorbic acid"— a non-juice synthetic preservative.

47. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

48. As a result of Defendant's deceptive practices, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

49. On behalf of himself and the New York Subclass members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT III
### Violation of New York G.B.L. §350
### (On Behalf of Plaintiff and the New York Subclass)

50. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

51. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

52. Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that the Products are made "In 100% Juice" containing "No [Artificial] Preservatives." Despite those representations, however, the Products contain "ascorbic acid"— a non-juice synthetic preservative.

53. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

54. Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

55. As a result of Defendant's false advertising, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

56. On behalf of himself and the New York Subclass members, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c) For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief; and

(f) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated October 4, 2023                              Respectfully submitted,

                                                                       **GUCOVSCHI ROZENSHTEYN, PLLC**

                                                                       By: /s/ Adrian Gucovschi
                                                                            Adrian Gucovschi, Esq.

                                                                      Adrian Gucovschi
                                                                    140 Broadway, Suite 4667
                                                                    New York, NY 10005
                                                                    Tel: (212) 884-4230
                                                                    adrian@gr-firm.com

                                                                    *Counsel for Plaintiff and the Classes*